**Jesus M. LOPEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60907.**

Court of Criminal Appeals of Texas, Panel No. 3.

April 14, 1982.

Abraham Karp, San Antonio, for appellant.

Bill M. White, Dist. Atty., Richard H. Noll and H. Wayne Campbell, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DALLY and McCORMICK, JJ.

OPINION

McCORMICK, Judge.

This is an appeal from a conviction of criminal negligent homicide. Punishment was assessed at 120 days and a $500 fine, probated. Appellant challenges the sufficiency of the evidence, so we will briefly highlight the facts now and discuss them more fully later in the opinion.

At 11:30 p. m., on September 1, 1977, the deceased was a passenger in a 1969 Chevrolet driven by Mrs. Trinidad Aguilar. Mrs. Aguilar was backing her car out onto Zarzamora Street from the parking lot of a Church's Fried Chicken store in San Antonio. After Mrs. Aguilar began backing out, she saw appellant's car speeding towards her. Realizing that a collision was imminent, she put her car in drive and tried to reenter the parking lot from which she had exited. Before she could enter the parking lot, her car was hit by appellant's car. Mrs. Aguilar's car was moved thirty-five feet from the point of impact to its final resting place. Immediately after the collision, both cars burst into flames. Mrs. Aguilar and her two passengers, one of whom was the deceased, were all taken to a hospital. The deceased, a seventy-nine year old woman, was first diagnosed as having a large laceration across her forehead, lacerations on her extremities and bruises around her arms. However, shortly after arriving at the emergency room, she went into full cardiac arrest and died.

In his first ground of error, appellant alleges reversible error was committed when the trial court allowed Officer Lewis to give his opinion on the speed of appellant's vehicle, such opinion being predicated solely upon the condition of the damaged vehicles after the collision. The record shows that the prosecutor asked Officer Lewis if he had an opinion as to whether or

not the vehicle that struck the 1969 Chevrolet was exceeding the speed limit. At that point, appellant's attorney objected on the basis that no foundation had been laid. When the court asked for clarification of his objection, appellant's attorney argued: "First of all, he was not a witness." The court overruled the objection. The prosecution attorney then began asking questions of Officer Lewis designed to lay a predicate outlining the officer's experience and the damage sustained by the 1969 Chevrolet. The prosecuting attorney again asked the officer if he had an opinion as to the speed of the vehicle. When the officer replied affirmatively, he was asked to state his opinion. The officer testified that appellant had been traveling in excess of thirty miles an hour. There was no objection to this question and answer. Thus, appellant has failed to preserve any error for review by this Court. *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978). In addition, we find that later in the trial, after appellant presented case law to the court, the jury was instructed to disregard Officer Lewis' testimony regarding the speed of appellant's car. Appellant suffered no harm. His first ground of error is overruled.

In his second ground of error, appellant asserts that the trial court committed reversible error in refusing to grant his motion for mistrial after striking out the police officer's testimony as to the speed of the appellant's car and instructing the jury not to consider that testimony for any purpose. The record shows that on the first day of trial Officer Lewis was allowed to give his opinion on the speed of appellant's car. At the beginning of the second day of trial, appellant's counsel presented case law to the court and argued that the court had erred in permitting the officer to so testify. Appellant's counsel asked the judge to instruct the jury to disregard Officer Lewis' statement and also requested the judge to grant a mistrial since the testimony was "so extreme that nothing but a mistrial could cure it." The court overruled appellant's motion for mistrial but did instruct the jury to disregard the testimony for any purpose.

"An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Carey v. State*, 537 S.W.2d 757, 759 (Tex. Cr.App.1976).

In *Furtick v. State*, 592 S.W.2d 616 (Tex. Cr.App.1980), in which Furtick was charged with murder, the trial court allowed the admission into evidence of two white bath towels, a green bath mat and a heat register grill, all covered with stains which resembled blood and vomit. After the items were introduced, it was determined that no analysis of the stains had ever been conducted. The evidence was withdrawn and the jury was instructed to disregard it. Furtick made a motion for mistrial which was overruled. This Court approved the trial court's action, holding that if any error was committed, the court's action in withdrawing the exhibits and instructing the jury to disregard them made it harmless.

In the case at bar, we believe the trial court's instructions to disregard Officer Lewis' testimony regarding the speed of appellant's car cured any error caused by the admission of such testimony. The trial court properly overruled appellant's motion for mistrial. Appellant's second ground of error is overruled.

Appellant's third and fourth grounds of error contend the trial court committed reversible error in admitting a series of colored slides showing the deceased with bloody wounds and then allowing the State to project the slides onto a screen by means of a slide projector. Appellant made a timely objection and now argues the slides inflamed the minds of the jury and were not probative of any material issue. The

State contends the slides were admissible as a pictorial description of the deceased's injuries.

 If a photograph is competent, material and relevant to an issue at trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body is admissible, then a photograph depicting the same is admissible. *Kelly v. State*, 621 S.W.2d 176 (Tex.Cr.App.1981); *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972). Slides, like still photographs and motion pictures, are admissible when they are properly authenticated, relevant to the issue and not violative of the rules of evidence for the admissibility of photographs. *Cotlar v. State*, 558 S.W.2d 16 (Tex.Cr.App.1977). In the instant case, verbal descriptions of the body of the deceased were admissible. The slides were properly authenticated by the doctor who attended the deceased. Therefore, the trial court did not abuse its discretion in admitting the slides. *Clark v. State*, 627 S.W.2d 693 (1982); *Burks v. State*, 583 S.W.2d 389 (Tex.Cr.App.1979), cert. denied 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1136 (1980). Appellant's third and fourth grounds of error are overruled.

 In appellant's fifth ground of error, he alleges that the trial court committed reversible error in denying appellant's motion for mistrial when it was brought to the court's attention that Rita Espinosa, a daughter of the deceased, had been sitting in the courtroom listening to the evidence. Appellant contends that somehow the fact that this individual was sitting in the courtroom violated the Rule which had been invoked at the beginning of trial. Article 36.03, V.A.C.C.P. The record shows that the woman was examined by the court and counsel for both the State and the appellant. The woman clearly testified that, although she had sat through the two previous days of trial, she had not spoken with any of the witnesses. It is well established that the object to be attained by placing witnesses under the Rule is to prevent one witness from being influenced by the testimony of another. *Brown v. State*, 523 S.W.2d 238 (Tex.Cr.App.1975); *Carlile v. State*, 451 S.W.2d 511 (Tex.Cr.App.1970). It is clear from the record that Rita Espinosa was not a witness in the case. There is nothing in the record to show that she conversed with any of the witnesses. If indeed there was injury done, appellant should have requested a bill of exceptions, called the witnesses to the stand and asked them if they had discussed the testimony with Rita Espinosa. Since no injury has been shown, we find that the judge did not commit reversible error in denying appellant's motion for mistrial. Appellant's fifth ground of error is overruled.

Next, appellant contends he was denied a fair trial due to the continuous, leading questions posed by the prosecutor. Appellant's presentation of this ground of error makes it difficult for this Court to locate said errors as appellant's brief furnishes us with only page and line numbers of twenty-three instances of supposedly leading questions. Close scrutiny of these references show that several of them are not pertinent to this ground of error. It would be better practice to quote the actual questions and answers complained of in the brief.

 In *Hill v. State*, 144 Tex.Cr.R. 57, 161 S.W.2d 80 (1941), this Court said:

"Asking harmless leading questions is not commended; yet we note that the courts seldom reverse a case because questions are leading."

In the instances complained of which refer to leading questions, the judge sustained every objection voiced by appellant's counsel. We find that no reversible error exists. See: *Calverley v. State*, 511 S.W.2d 60 (Tex. Cr.App.1974); *Uhl v. State*, 479 S.W.2d 55 (Tex.Cr.App.1972); *Tucker v. State*, 461 S.W.2d 630 (Tex.Cr.App.1970), cert. denied 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696

(1971). Appellant's sixth ground of error is overruled.

■ Appellant, in his final ground of error, contends the evidence was insufficient to support his conviction in that there was no credible evidence that appellant had the requisite culpable mental state for the offense of criminally negligent homicide. More particularly, appellant urges "there was no credible evidence that appellant was aware of a substantial and unjustifiable risk, nor was the failure of the appellant to perceive it a gross deviation from the standard of care that an ordinary person would exercise...." Appellant has misstated the State's burden of proof. The State does not have to prove that appellant was aware of a substantial and unjustifiable risk, rather the State has to prove that appellant *ought* to have been aware of a substantial and unjustifiable risk.

Criminal negligence is defined as follows:

"(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct, or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." V.T.C.A. Penal Code, Section 6.03.

The practice commentary to that section states that the State must prove that (1) the risk the defendant perceived or ought to have perceived was both substantial and unjustifiable, and (2) the defendant's disregard of the risk or his failure to perceive it constituted a gross deviation from the ordinary standard of care.

The pertinent part of the information charging appellant reads as follows:

"... did then and there cause the death of an individual, namely: ROSITA BRIONES, by criminal negligence, to-wit: that the said JESUS M. LOPEZ, defendant herein, did then and there while operating a motor vehicle upon a public street namely: SOUTH ZARZAMORA, NORTHBOUND, collide with another motor vehicle, to-wit: a 1969 CHEVROLET, as a result of the defendant's unlawful acts of driving at a speed in excess of the lawful speed limit of 30 miles per hour and failing to stop for a red light at the intersection of SOUTH ZARZAMORA and CERALVO WHICH CONTROLS NORTHBOUND AND SOUTHBOUND TRAFFIC, which collision caused bodily injury to the said ROSITA BRIONES, a passenger in the CHEVROLET motor vehicle, resulting in her death; ..."

■ As set out in *Griffin v. State*, 614 S.W.2d 155 (Tex.Cr.App.1981), when the question of sufficiency of the evidence is raised, we, the reviewing court must review all of the evidence in the light most favorable to the prosecution. That is, we must not ask ourselves whether we believe that the evidence at trial established guilt beyond a reasonable doubt, but our inquiry must be that, after viewing the evidence in the light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime beyond a reasonable doubt. See also *Edwards v. State*, 561 S.W.2d 834 (Tex.Cr.App.1977). With that in mind, we will now look at the evidence.

In examining the record, we first note that the court look judicial notice of the fact that the legal speed limit in an urban area is thirty miles per hour. Rosario Calvillo testified that she was waiting in line at Church's Fried Chicken when she noticed that the traffic light controlling east-west cross traffic on Ceralvo was green. While that particular light was green, she noticed appellant's car speeding north on Zarzamora and saw it crash into the car in which the deceased was riding. Mrs. Calvillo testified that she had fourteen years' driving experi-

ence and could tell whether a car was going fast or slow. At trial, she testified that appellant's car was traveling forty to fifty miles per hour. Trinidad Aguilar, the driver of the car in which the deceased was riding, testified that after purchasing chicken from the Church's Fried Chicken outlet, she began backing out onto Zarzamora. When she began backing out, there were not cars coming north on Zarzamora. However, as she approached the center of the street, she saw the lights of appellant's car coming straight at her. She put her car in forward and attempted to go back into the parking lot of Church's Fried Chicken, but her car was struck by appellant's car before she could make it back into the parking lot. Mrs. Aguilar also testified that as she was backing out she noticed that the light controlling the southbound traffic on Zarzamora, at the intersection of Zarzamora and Ceralvo, was red.

Wilson Greene, a claims adjuster, testified that from the damage done to Mrs. Aguilar's car he could tell the impact was very severe, and that appellant's vehicle must have been traveling at a high rate of speed.

Odulia Salazar, another passenger in Mrs. Aguilar's car, testified that as they began backing out onto Zarzamora the deceased told Mrs. Aguilar to go ahead because no cars were coming. However, as they were backing towards the center of the street, Mrs. Salazar testified she saw appellant's car approaching "real fast" and she told Mrs. Aguilar to look out because a car was coming too fast.

As noted above, the State had to prove that the risk the appellant perceived or ought to have perceived was both substantial and unjustifiable.

"Whether a risk is 'substantial' and 'unjustifiable' would depend on the following equation: the possibility of injury and the gravity of the potential harm, balanced against the desirability of the conduct, and in the case of a possible beneficial result, the availability of less dangerous alternatives. In the case of serious possible harm, a slight chance that it would occur would be an unjustifiable risk if the social utility of the conduct were nil, such as firing a gun in the air for amusement." Bubany, "The Texas Penal Code of 1974", 28 S.L.J. 293 (1974), at 305.

According to the verdict in this case, the jury found that appellant, while driving a speeding car on a city thoroughfare at 11:30 p. m., ran a red light, and collided with the car driven by Trinidad Aguilar, causing the death of the decedent. If we plug these facts into the equation set out above, we find that the jury was justified in finding that the possibility of injury and harm was so great as compared to any possible beneficial result of appellant's conduct, that appellant took a substantial and unjustifiable risk by his conduct.

The State also had to prove that appellant's disregard of the risk or his failure to perceive it constituted a gross deviation from the ordinary standard of care. Since "... the inadvertence to risk involved in criminal negligence are (sic) to be measured according to the standard of an 'ordinary person' from the 'actor's standpoint', the facts known or the degree of risk perceived by the allegedly reckless actor, or of which the reasonably prudent man would have been aware in the circumstances of the allegedly negligent actor, should be relevant. The trier of fact must make an evaluative judgment whether the actor's failure of perception constituted a gross deviation from acceptable standards of conduct." Bubany, supra, at page 305.

In viewing the evidence in the light most favorable to the verdict, we find the evidence supports the jury finding that an ordinary or reasonably prudent person, in appellant's position, ought to have been aware that a substantial and unjustifiable risk was created when he exceeded the speed limit and ran a red light on a city thoroughfare at 11:30 p. m.

"... [P]roof of a culpable mental state generally relies on circumstantial evidence. Upon consideration of recklessness versus criminal negligence, whether one is aware of a requisite risk or simply should be aware of it, is a conclusion to be drawn through inference from all the circumstances by the trier of fact. * * * The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk. If such an inference is reasonable, it is for the trier of fact to determine which circumstances to accept as proven and whether to draw that inference, and it is not for this Court to overturn such an inference, drawn on the whole of circumstances, because one witness testified to the possibility that the inference could be false even though soundly supported by the circumstances. Such an approach to the issues of proof of culpable mental states would render the evidence insufficient in all cases, as it is always *possible* that one's intents are different than what all outward appearances would indicate." *Dillon v. State*, 574 S.W.2d 92 (Tex.Cr.App.1978), at 94. See also *Giles v. State*, 617 S.W.2d 690 (Tex.Cr.App.1981). Appellant's seventh ground of error is overruled.

The judgment is affirmed.